**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**LARRY WALKER**                                                                    **PLAINTIFF**

**v.**                                            **2:05CV00030-WRW**

**RICELAND FOODS, INC.**                                               **DEFENDANT**

## ORDER

Pending is Defendant's Motion for Summary Judgment (Doc. No. 6). Plaintiff has responded (Doc. 10). Plaintiff alleges that he suffered race discrimination at the hands of Defendant and brought suit under 42 U.S.C. § 1981 ("1981"), Title VII, and the Arkansas Civil Rights Act ("ACRA").[1] Defendant has asked for summary judgment on the grounds that Plaintiff cannot establish the *prima facie* elements of racial discrimination or retaliation with regard to events occurring before his termination or from the termination itself. Defendant also argues that even if Plaintiff were able to establish a *prima facie* case of racial discrimination or retaliation, Defendant had legitimate, non-discriminatory reasons for his termination. Defendant's motion is GRANTED.

## I.      Background

Plaintiff was hired in 1996 as a dryer operator at Defendant's grain drying and storage facility in Wheatley, Arkansas. Plaintiff remained a dryer operator throughout his employment with Defendant.

In September of 1998, Plaintiff was briefly terminated for absenteeism. Specifically, Plaintiff called in sick on his birthday but never turned in the requisite doctor's excuse explaining

---

[1]Ark. Code Ann. § 16-123-105.

his absence.  Plaintiff was terminated on September 27, 1998, by Carl Wheeler ("Wheeler"), the

District Manager.  After his termination, Plaintiff telephoned Linda Dobrovich ("Dobrovich"),

Defendant's Director of Human Resources, and asked her to review his attendance records.

Dobrovich concluded that Plaintiff's absence did not warrant termination and had Wheeler reinstate

him.  Plaintiff was immediately reinstated and reimbursed for the four days he missed work due to

Defendant's actions.  Unbeknownst to Defendant and before Plaintiff's reinstatement, he filed a

complaint with the EEOC on October 1, 1998.[2]   Plaintiff abandoned the EEOC claim after his

reinstatement, but argues that he was retaliated against for filing it anyhow.

    Plaintiff worked from his reinstatement until September 29, 2004, without incident.  On this

latter date, Plaintiff was fired for disrupting the workforce.  Plaintiff was working the night shift

with a temporary employee, Jermaine Privett ("Privett").  At some point during the shift, Plaintiff

and Privett got into an argument over how to perform the work.  Privett left his post and went to

Sherman to complain about Plaintiff's behavior.  After receiving the complaint, Sherman called Opal

Derrick ("Derrick"), the District Manager, to advise him of the problem. Together, Sherman and

Derrick went to Plaintiff's unit to discuss the situation.

    Once there, Derrick suggested that Plaintiff go home for the night to cool off.  Plaintiff

adamantly refused and continued to work despite Derrick's suggestion and despite his agitated state.

After several unsuccessful attempts to quietly calm the situation, Derrick fired Plaintiff and ordered

him to leave the premises.  Plaintiff refused to leave, forcing Derrick to call the police to have him

removed from the property.

---

[2]Doc. No. 9-3, p. 14 and 20.

In the three years before Plaintiff's termination, Plaintiff was only disciplined once - - for falsifying a reason for an absence.   Defendant gave Plaintiff a written warning, but it carried no consequences and simply went into his file. Plaintiff admits that in the six years between his terminations, he was never punished, suspended, or disciplined and continued to receive yearly raises.[3]

## II.    Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[4]   The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[5]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[6]   Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[7]   I must view the facts in the light most favorable to the

---

[3]Doc. 8-2, p.25-26.

[4]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[5]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[6]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[7]*Id.* at 728.

party opposing the motion.[8]   The Eighth Circuit has also set out the burden of the parties in

connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate,
> *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine
> dispute on a material fact.  It is enough for the movant to bring up the fact that the
> record does not contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is discharged, and, if the record
> in fact bears out the claim that no genuine dispute exists on any material fact, it is
> then the respondent's burden to set forth affirmative evidence, specific facts,
> showing that there is a genuine dispute on that issue.  If the respondent fails to carry
> that burden, summary judgment should be granted.[9]

Only disputes over facts that may affect the outcome of the suit under governing law will properly

preclude the entry of summary judgment.[10]

## III.   Analysis

### A.   Discrimination

Title VII disparate treatment claims, § 1981 claims, and ACRA claims are analyzed in the

same manner.[11]   The applicable analysis was established in *McDonnell Douglas Corp. v. Green*, [12]

and involves a burden-shifting framework.[13]   "Under the *McDonnell Douglas* framework, a

presumption of discrimination is created when the plaintiff meets [his] burden of establishing a

*prima facie* case of employment discrimination. A minimal evidentiary showing will satisfy this

---

[8]*Inland Oil & Transport Co.*, 600 F.2d at 727-28.

[9]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (*quoting City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[10]*Anderson*, 477 U.S. at 248.

[11]*Davis v. KARK-TV, Inc.*, 421 F.3d 699, 703 (8th Cir. 2005).

[12]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973).

[13]*Davis*, 421 F.3d at 704.

4

burden of production."[14]   Once a plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to articulate "a legitimate, non-discriminatory reason for its adverse employment action."[15]   If the employer meets its burden, "the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination."[16]   The plaintiff has the burden of persuasion at all times.[17]

To establish a *prima facie* case of discrimination, Plaintiff must show that: (1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently.[18]   A minimal evidentiary showing will satisfy this burden of production.[19]

Plaintiff, as an African-America, is a member of a protected class.  Plaintiff claims he was treated disparately when he was terminated on September 29, 2004.  In support of his allegations, Plaintiff argues that he was disciplined at least six or seven times in the three years before his termination.  Plaintiff could not recount or document any of the alleged occasions.[20]   Defendant had

---

[14]*Davis*, 421 F.3d at 704.

[15]*Davis*, 421 F.3d at 704 (*quoting Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994)).

[16]*Id.*

[17]*Id.*

[18]*McDonnell Douglas*,  411 U.S. at 802-03; *see also Davis*, 421 F.3d at 703.

[19]*Id.*

[20]Doc. 8-2, pp. 21-22.

5

a record of one written warning.  As pointed out above, the warning resulted in no lost time at work, no lost wages, no demotion, and no other adverse employment action.

Plaintiff's disparate treatment claim is further weakened by Plaintiff's acknowledgment that he never had a problem with anyone in management except Sherman, his supervisor.[21]   Sherman found Plaintiff to be a hostile employee and even assessed Plaintiff as uncooperative in an Employee Appraisal Form.[22]   Sherman stated that he had several temporary employees quit during harvest season, Defendant's busiest time, because they claimed they could not work with Plaintiff.[23]  Despite the admitted tensions between Sherman and Plaintiff, Plaintiff admits that Sherman was equally as harsh on white and African-American employees.[24]  And, in the end, it was Derrick, not Sherman who made the decision to terminate Plaintiff's employment.

The night Plaintiff was fired, he was working with Privett, an African-American.  After the two men had words, Sherman asked Privett to go home and cool off and come back the following day rather than quit.  Plaintiff was also given this opportunity; however, he refused to leave and became verbally combative.   An insubordinate employee was not meeting the legitimate expectations of his employer, so, Derrick fired Plaintiff.  It is clear that Defendant, through its management, had a race-neutral reason to end Plaintiff's employment - - the fact that he was being disruptive on the job.   Plaintiff also fails to mention a single other employee who is similarly

---

[21]Doc. 8-2, p. 29.

[22]Doc. 9-2, pp. 7 and 49.

[23]Doc. 9-2, p. 9.

[24]Doc. 8-2, p. 28.

situated and was treated differently.  Because Plaintiff has failed to establish *prima facie* evidence of disparate treatment, his claims must fail.

**B.     Retaliation**

Plaintiff next claims that Defendant through its management retaliated against him for bringing an EEOC claim in 1998.  The same burden-shifting analysis established in *McDonnell Douglas* applies to his retaliation claim.[25]   Under this burden-shifting framework, a plaintiff first must demonstrate a *prima facie* case of retaliation.[26]

To establish a *prima facie* case of retaliation, Plaintiff must show (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action.[27]   If the plaintiff presents a *prima facie* case of retaliation, the burden shifts to the employer to rebut the plaintiff's *prima facie* case by articulating a legitimate, nondiscriminatory reason for its adverse employment decision.[28] If the employer successfully makes this showing, the burden shifts back to the plaintiff to present evidence that (1) creates a question of fact as to whether the employer's proffered reason was pretextual and (2) creates a reasonable inference that the employer acted in retaliation.[29]

Plaintiff engaged in a statutorily protected activity in 1998 when he filed an EEOC charge after his termination.  However, Defendant was able to present unrebutted testimony that it had

---

[25] *See Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1078 (8th Cir. 2005).

[26]*Id.*

[27]*Id.* at 1078-79.

[28]*Id.* at 1078.

[29]*Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005).

already reinstated Plaintiff before it had knowledge of the charge.[30]   Moreover, six years passed without any notable disciplinary actions before Plaintiff was fired for disrupting work.  The Eighth Circuit has held that a gap in time between the protected activity and the adverse employment action "weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint."[31]   In fact, Plaintiff admits that no one at Riceland ever mentioned the EEOC claim to him.[32]  Plaintiff wholly has failed to show a connection between the 1998 protected activity and Derrick's decision to terminate him in 2004.

**III.**   **Conclusion**

For the foregoing reasons, Defendant's motion is GRANTED.

IT IS SO ORDERED this 9th day of February, 2006.

/s/ Wm. R.Wilson,Jr.
UNITED STATES DISTRICT JUDGE

---

[30]Doc. No. 9-3, p. 14.

[31]*Calder v. TCI Cablevision of Missouri, Inc.*, 298 F.3d 723 (8th Cir. 2002) (holding that seventeen months between a complaint and termination was too far attenuated to evidence retaliation).

[32]Doc. No. 8-2, p.18.

8